PEOPLE v SOLAK

Docket No. 79241. Submitted August 20, 1985, at Detroit.—Decided November 4, 1985.

Defendant, Jerome B. Solak, Jr., was charged with driving under the influence of intoxicants and assault and battery. He was acquitted of the DUIL charge and convicted of assault and battery, 37th Judicial District Court. Defendant appealed and the Macomb Circuit Court, Kenneth N. Sanborn, J., affirmed. Defendant applied to the Court of Appeals for leave to appeal, which was denied. Defendant applied to the Supreme Court for leave to appeal which, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration as on leave granted, 419 Mich 892 (1984). *Held:*

1. The assault and battery took place while a police officer was attempting to establish defendant's identity in order to cite

---

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Trials § 1111.

See the annotations in the ALR3d/4th Quick Index under Joinder of Actions.

[2] Am Jur 2d, Appeal and Error §§ 778, 779, 798.

See the annotations in the ALR3d/4th Quick Index under Depositions and Discovery.

[3] Am Jur 2d, Witnesses § 603.

Effect of witness' violation of order of exclusion. 14 ALR3d 16.

[4] Am Jur 2d, Appeal and Error § 618.

[5] Am Jur 2d, Assault and Battery §§ 2 *et seq.*

[6-9] Am Jur 2d, Witnesses § 2.

Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to reliability of, or factors to be considered in evaluating, eyewitness identification testimony—state cases. 23 ALR4th 1089.

[10] Am Jur 2d, Evidence § 715.

Admissibility, as res gestae, of accusatory utterances made by homicide victim before the act. 74 ALR3d 963.

[11] Am Jur 2d, Evidence §§ 249 *et seq.*

[12-14] Am Jur 2d, Trial §§ 195, 253.

[13, 14] Am Jur 2d, Appeal and Error §§ 545 *et seq.*

[15] Am Jur 2d, Judgments §§ 106-151.

him for a traffic violation. The trial court did not abuse its discretion in denying defendant's motion for separate trials.

2. The Court of Appeals found no error in the trial court's enforcement of its discovery order.

3. The trial court did not abuse its discretion in allowing a witness who had violated a sequestration order to testify on rebuttal. The witness's violation lasted only a short time and the testimony heard by the witness was not related to the subsequent rebuttal testimony.

4. The trial court did not err in denying defendant's motion for a directed verdict on the assault and battery charge.

5. The trial court ruled *sua sponte* that defendant could not introduce only a portion of the police incident report. Defendant sought to introduce a portion of the report to show that the words "D.U.I.L." and "assault on a police officer" were not typed at the same time. The court ruled that the entire incident report would have to be admitted. The ruling, if error, was harmless since the officer who made out the report admitted that the words were not typed at the same time.

6. The trial court erred in ruling that the rule requiring the prosecution to indorse and produce all res gestae witnesses did not apply to misdemeanor cases. However, that ruling does not require reversal, since the court's ruling that there were no res gestae witnesses was not clearly erroneous.

7. The trial court did not abuse its discretion by excluding evidence of defendant's hospitalization after the arrest because said evidence was not relevant to a determination of whether defendant committed the charged offenses.

8. The trial court ruled that surrebuttal testimony on the question of whether defendant used vulgarities while in the lock-up was not necessary to impeach certain rebuttal testimony. The trial court based its ruling on the fact that defendant had already presented evidence which, if believed, indicated that he typically did not use vulgar language and that he did not use the vulgarities to which the witness testified. The record supports the trial court's findings and defendant was not entitled to present further proofs on the matter.

9. The trial court did not abuse its discretion in denying defendant's motion to reopen the proofs to present newly discovered evidence to impeach a witness's testimony. The evidence was in defendant's possession 1-1/2 months prior to trial.

10. Defendant's challenge to remarks in the prosecutor's opening statement does not require reversal because the failure of a prosecutor to present evidence which the prosecutor had

stated would be submitted to the jury does not mandate reversal where the prosecutor has acted in good faith. The prosecutor acted in good faith.

11. Defendant challenged the unobjected-to statement of the prosecutor during closing argument concerning the presumption of innocence. The absence of an objection during trial precludes appellate review of alleged prejudicial remarks by a prosecutor during closing argument, unless the prejudicial effect was so great that it could not have been cured by timely cautionary instruction. The court did give a proper instruction on the presumption of innocence. Also, the error of the prosecutor's reference to crimes other than the one charged was corrected when the court instructed the jury on the elements of assault and battery.

12. The prosecutor's remarks concerning the credibility of a prosecution witness did not amount to error requiring reversal because of its responsive nature and because, had it been objected to, a curative instruction could have been given.

13. Defendant cannot claim that the trial court erred in failing to grant a new trial, since he didn't ask for a new trial.

14. The trial court did not err in denying defendant's motion for a judgment notwithstanding the verdict.

Affirmed.

1. CRIMINAL LAW — TRIAL — JOINDER.

Charges of separate and distinct offenses which are committed by the same acts at the same time where the same testimony must be relied on for conviction may be joined for trial.

2. CRIMINAL LAW — DISCOVERY ORDERS — HARMLESS ERROR.

Violation of a discovery order by a prosecutor, even where done inadvertently and in good faith, is grounds for reversal on appeal absent clear evidence that the failure to divulge the information which was the subject of the discovery order was harmless beyond a reasonable doubt; harmless error results where the evidence which was subject to the discovery order is fully brought out at trial and the failure to comply with the discovery order does not unduly prejudice the trial preparation of defense counsel.

3. CRIMINAL LAW — WITNESSES — SEQUESTRATION — APPEAL.

The decision to exclude the testimony of a witness who has violated a sequestration order is within the trial court's discretion; to prevail on appeal, a defendant who claims that a witness violated a sequestration order must demonstrate that prejudice resulted.

4. Appeal — Issues on Appeal — Supporting Citations.

A statement of position without supporting citations is insufficient to bring an issue before the Court of Appeals; a party may not leave it to the court to search for authority to sustain or reject his position.

5. Assault and Battery — Criminal Law.

An assault and battery is a consummated assault.

6. Criminal Law — Res Gestae Rule — Misdemeanors.

The rule that the prosecution must indorse and produce all res gestae witnesses applies to misdemeanor cases.

7. Criminal Law — Res Gestae Witnesses — Appeal.

A trial court's decision as to whether a witness is a res gestae witness will not be overturned on appeal unless clearly erroneous.

8. Witnesses — Res Gestae Witnesses.

A res gestae witness to a crime is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged offense.

9. Criminal Law — Res Gestae Witnesses — Presumptions — Burden of Proof.

There is a rebuttable presumption that persons present at the time and place of the commission of a crime are res gestae witnesses; it is the burden of the prosecution to prove otherwise.

10. Evidence — Admissibility — Appeal.

The admissibility of evidence is a question that rests within the sound discretion of the trial court, whose decision to admit or exclude evidence should not be overturned absent a clear abuse of discretion.

11. Evidence — Relevance — Rules of Evidence.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence; evidence which is not relevant is not admissible, and even if relevant, a trial court may choose to exclude evidence on the ground of prejudice, confusion, waste of time, or needless presentation of cumulative evidence (MRE 401, 402, 403).

12. Criminal Law — Prosecutorial Comment — Evidence.

The failure of a prosecutor to present evidence which the prose-

cutor had stated would be submitted to the jury does not mandate reversal where the prosecutor has acted in good faith.

13. CRIMINAL LAW — PROSECUTORIAL COMMENT — APPEAL — PRE-SERVING QUESTION.

The absence of an objection during trial precludes appellate review of alleged prejudicial remarks by a prosecutor during closing argument, unless the prejudicial effect was so great that it could not have been cured by timely cautionary instruction.

14. CRIMINAL LAW — PROSECUTORIAL COMMENT — APPEAL — PRE-SERVING QUESTION.

The absence of an objection at trial precludes appellate review of the prosecutor's improper statements regarding a witness's credibility unless failure to consider the issue would result in a miscarriage of justice.

15. CRIMINAL LAW — JUDGMENT NOTWITHSTANDING THE VERDICT.

Judgment notwithstanding the verdict is to be granted in a criminal case only if there is insufficient evidence for a rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt of the crime charged.

*John J. Murray,* for the people.

*Kistner, Schienke, Staugaard, Dettloff, Hill, Kistner & Troyanovich, P.A.* (by *Gary R. Dettloff*), for defendant.

Before: MacKENZIE, P.J., and CYNAR and H. E. DEMING,* JJ.

CYNAR, J. Defendant appeals his conviction by a jury of assault and battery, MCL 750.81; MSA 28.276. Defendant was charged with driving under the influence of intoxicants, contrary to a City of Warren ordinance,[1] and assault and battery. This Court originally denied leave to appeal in this case. However, the Supreme Court remanded this case to this Court for consideration as on leave granted.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] City of Warren Ordinance, Title 5, Chapter 1, § 5-131.

All witnesses agreed at trial that on May 9, 1981, at approximately 11:20 p.m. defendant was stopped by the City of Warren police for speeding while driving down Eight Mile Road in a westerly direction. After being pulled over by the police, defendant drove his car into the back parking lot of the Wendy's Restaurant located at Eight Mile Road and Dequindre. The testimony of the police witnesses and defendant differ significantly as to what happened from that time on.

The testimony of Officer Gerald Gidner indicates the following. Officer Gidner stopped defendant because he was travelling at a speed of approximately 63 mph in a 40 mph zone. After defendant drove his car into the Wendy's parking lot, Officer Gidner approached the car and asked to see defendant's driver's license and car registration. Defendant attempted to get out of the car, but Gidner told him to remain inside the car. Defendant subsequently got out of his car. Defendant's wife, who was a passenger in the car, remained inside the car. Defendant showed Gidner that his license was in his wallet but refused to take it out. Gidner made a second request for defendant's driver's license. Defendant then allegedly threw the wallet in Gidner's direction, striking Gidner on the chest. As Gidner bent down to pick up the wallet, defendant gestured as if he was going to kick Gidner. Gidner straightened up without picking up the wallet and then radioed for assistance. Gidner then picked the wallet up and attempted to remove defendant's license. Defendant responded by threatening to sue Gidner if he removed the license. Gidner removed the license and defendant hit Gidner on the right shoulder with a closed fist. Officer Louis Falbo and his partner, Officer Roger Peplaski, arrived at the scene at this moment. Officer Falbo testified that he observed Gidner

flying backwards after defendant pushed Gidner on the shoulder with an open hand. Officer Peplaski did not observe defendant pushing or hitting Gidner.

There was further testimony which indicated that, when Officers Gidner, Falbo and Peplaski attempted to arrest defendant, he kicked or spit at them and used vulgar language. Defendant also appeared to be intoxicated at the time he was arrested.

Defendant's version of the stop and arrest differed considerably from that of the police witnesses. According to defendant's testimony, Gidner stopped defendant's car and asked for defendant's wallet after saying, "Look what we've got here. A big, bad cowboy." Defendant attempted to remove his license from his wallet, but the license stuck to the wallet. Gidner then hit defendant's hand and the wallet fell to the ground. As Gidner picked the wallet up, defendant threatened to sue Gidner if he removed the license. Gidner then pushed defendant on his left shoulder. Defendant lost his balance and accidentally struck Gidner with an open hand. Defendant further testified that he was beaten by the police officers during the period of time surrounding the arrest.

Defendant's wife testified that she did not see defendant push or strike Officer Gidner.

On Appeal defendant raises nine issues, none of which require reversal. We will discuss the issues in the order raised by defendant.

# I

Defendant first argues that the trial court erred in denying defendant's motion for separate trials as to the two charges—driving under the influence

of intoxicants and assault and battery of a police officer.

The drunk driving charge required proof that defendant's ability to operate a motor vehicle was substantially and materially affected by consumption of intoxicating liquor and that defendant operated the motor vehicle while in such condition. *People v Lambert*, 395 Mich 296, 305; 235 NW2d 338 (1975). Assault and battery, on the other hand, required a finding of willful touching of another by the aggressor or some object put in motion by him. *People v Bryant*, 80 Mich App 428; 264 NW2d 13 (1978), *lv den* 402 Mich 942 (1978). The two charges have no overlapping elements and are therefore separate and distinct offenses.

Charges of separate and distinct offenses which are "committed by the same acts at the same time and the same testimony must be relied on for conviction,"[2] may be joined for trial. *People v Johns*, 336 Mich 617, 623; 59 NW2d 20 (1953). This test was expanded in *People v Tobey*, 401 Mich 141; 257 NW2d 537 (1977), to situations where the offenses are not committed at the same time. In *Tobey* the Supreme Court, quoting the ABA Standards Relating to Joinder and Severance,[3] held that a trial judge does not have the discretion to permit joinder of separate offenses unless the offenses "are of the same or similar character" or "are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan". The Court noted, however, that the ABA Standards also provide "that when offenses have been joined 'solely on the ground

[2] This passage was quoted approvingly by the Court in *People v Johns*, 336 Mich 617, 623; 59 NW2d 20 (1953), and, it noted, is from the "[s]yllabus in *People v Sweeney*, 55 Mich 586 [22 NW 50 (1885)], as quoted with approval in *People v Larco*, [331 Mich 420, 428; 49 NW2d 358 (1951)]".

[3] ABA Standards Relating to Joinder and Severance, Standard 2.1.

that they are of the same or similar character, the
defendant shall have a right to a severance of the
offenses,' and that in the other situations where
joinder is permitted the court shall grant a sever-
ance 'whenever * * * it is deemed appropriate to
promote a fair determination of the defendant's
guilt or innocence of each offense' ".[4] 401 Mich 151.

In the present case, defendant hit Gidner while
Gidner was attempting to establish defendant's
identity in order to cite him for a traffic violation.
Under the circumstances, we find that the trial
court did not abuse its discretion in denying defen-
dant's motion for separate trials on the two offen-
ses.

## II

Defendant next argues that the trial court erred
in failing to enforce its pretrial discovery order
and sequestration order.

During a pretrial hearing defendant informed
the trial court that the prosecution had failed to
respond to a discovery request. Defendant specifi-
cally referred to a videotape which was allegedly
made of defendant while he was in the lock-up.
The trial court informed defendant that he could
obtain a copy of anything which was contained in
the court file. The prosecution claimed that the
court file was the only file in the custody of the
police regarding this case.

At the beginning of the trial, defendant in-
formed the trial court that a tape was made of
Gidner's conversation with the police radio dis-
patcher during the time surrounding the arrest.
Defendant was not supplied with a copy of this
tape and the tape was apparently destroyed by the

---

[4] See ABA Standards Relating to Joinder and Severance, Standard
2.2.

time the trial commenced in this case. Both the trial court and the prosecution stated that they were not aware of the fact that defendant's discovery request for statements of defendant and the witnesses included the radio dispatch tape. The trial court also stated that the tapes were probably available at the time defendant first made his discovery request because it was the policy of the police department to retain radio dispatch tapes for 30 days. After the trial court acknowledged this fact, defendant raised no other objections to the prosecution's failure to supply him with the tape and did not move for a dismissal.

It is clear from the record that neither the trial court nor the prosecution understood defendant's discovery request to encompass the police radio dispatch tape. Defense counsel did not inform the trial court of his need for the tape until after the tape had been destroyed.

Defendant sought to use the tape to impeach Gidner's testimony concerning the number of times Gidner called the radio dispatcher after he stopped defendant's car. Evidence was presented at trial which, if believed, impeached Gidner's testimony concerning the number of calls placed to the dispatcher after defendant was stopped. Hence, even if the prosecutor violated a discovery order, which we do not concede, the defendant can point to no prejudice. Based on these facts, we find no reversible error in the trial court's enforcement of the pretrial discovery order. See *People v Hatch,* 126 Mich App 399, 402-403; 337 NW2d 79 (1983).

Defendant also contends that the trial court violated its pretrial discovery order excluding any reference to attempts by the police to administer a breath test to defendant. We find the record does not support defendant's claim. The trial court properly found that the pretrial order only related

to the exclusion of any reference to defendant's refusal to take the breath test. Hence, it was not error for the trial court to conclude that, so long as there was no reference to the defendant's refusal to take the test, testimony concerning the time Gidner attempted to administer the test and the reading of defendant's rights would be admissible for impeachment purposes.

Defendant further contends that the trial court violated its sequestration order by allowing Gidner to give rebuttal testimony after he had violated the court's order. This objection was timely raised at trial and the trial court overruled the defendant's objection on two bases. First, the court found that Gidner had a right to be present during the defendant's testimony because he was the complaining witness. Second, the trial court concluded that Gidner was present for only a few minutes during the defendant's testimony and that the testimony for which he was present was not related to the testimony he was being called to rebut.

It is well settled that the decision to exclude the testimony of a witness who has violated a sequestration order is within the trial court's discretion. *People v Boose,* 109 Mich App 455, 474-475; 311 NW2d 390 (1981); *People v Dickerson,* 62 Mich App 457; 233 NW2d 612 (1975), *lv den* 396 Mich 840 (1976). A defendant who complains on appeal that a witness violated the lower court's sequestration order must demonstrate that prejudice has resulted. *People v Hill,* 88 Mich App 50, 65; 276 NW2d 512 (1979). Because Gidner was only present for a few minutes during defendant's testimony and said testimony was not related to the rebuttal testimony for which Gidner was being called, we find no abuse of discretion in the trial court's decision to allow Gidner's testimony.

### III

Defendant next argues that the trial court erred in denying his motion for a directed verdict on the assault and battery charge.

We note initially that we may decline to consider this question because defendant has failed to cite any authority for it. A party may not leave it to the Court to search for authority to sustain or reject a position. *Kucken v Hygrade Food Products Corp,* 51 Mich App 471; 215 NW2d 772 (1974). Addressing this issue, nevertheless, we find defendant's claim to be meritless.

An assault and battery is a consummated assault. *People v Bryant, supra,* p 433. The testimony of Officers Gidner and Falbo, if believed, indicated that defendant hit Gidner with either a closed fist or an open hand. Thus, taking the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den* 449 US 885; 101 S Ct 239; 66 L L Ed 2d 110 (1981).

### IV

Next, defendant claims that the trial court erred in refusing to allow the admission of defendant's proposed Exhibit I. The excluded exhibit was the top portion of the incident report which defendant sought to produce to show that the words "D.U.I.L." and "assault on a police officer" were not typed at the same time. The trial court ruled that, if defendant wanted to introduce the top portion of the incident report, the whole report would have to be admitted into evidence. MRE 106 provides that:

"When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

Our review of the incident report indicates that the admission of the whole report was necessary to enable the jury to determine which portions had been altered and whether the altered portions had been contrived after the original report was made out. Hence, under the above-quoted rule the prosecution was entitled to have the whole incident report before the jury. The prosecution, however, did not object to the defendant's request to introduce only the top portion of the report. Instead, the trial court ruled *sua sponte* that defendant would have to introduce the whole report. Any error committed by the trial court's *sua sponte* ruling was harmless for the following reason.

The incident report was prepared by Officer Gidner. He testified that the words "assault on a police officer" were typed on the incident report at a different time than the letters "D.U.I.L." Gidner explained that the assault charge was subsequently added to the incident report because he had originally planned to file two separate reports on the incident—one charging defendant with driving under the influence only, and the other charging him with assault on a police officer. Hence, admission of the top portion of the incident report would have been cumulative evidence of the fact that the document was altered after its original typing.

## V

Defendant next claims that the prosecution's

failure to indorse and produce res gestae witnesses requires reversal of his conviction.

The question presented is whether the prosecutor was required to indorse and produce res gestae witnesses for this misdemeanor offense and, if so, whether the prosecutor and the police were negligent in failing to produce such witnesses. The Supreme Court remanded this case to this Court with instructions that this issue be addressed.

At the outset it should be noted that the parties disagree as to whether there were any missing res gestae witnesses.

At the close of the prosecutor's case in chief, defense counsel moved for a new trial on the basis that the prosecution had failed to indorse and produce all res gestae witnesses at trial. The trial court concluded that the res gestae witness rule did not apply to misdemeanor cases and that there was no indication that there were missing res gestae witnesses in this case. The trial court denied defendant's motion for new trial.

We believe that the trial court erred in concluding that the res gestae rule does not apply to this misdemeanor case. See *People v Burton,* 71 Mich App 473; 247 NW2d 336 (1976). However, the trial court's finding that there were no res gestae witnesses was not clearly erroneous, based on the facts presented in this case. *People v Abrego,* 72 Mich App 176; 249 NW2d 345 (1976).

It is well settled that a res gestae witness is one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense. *People v Joseph LeFlore (After Remand),* 122 Mich App 314; 333 NW2d 471 (1983). There is a rebuttable presumption that persons present at the time and place of the

commission of a crime are res gestae witnesses and the burden is on the prosecutor to prove otherwise. *People v Samuels,* 62 Mich App 214; 233 NW2d 520 (1975). In the present case, there is no indication that the witnesses other than the three who were interviewed by Sergeant May were near to, or present at, the time and place of the crime. The three alleged witnesses interviewed by Sergeant May stated that they did not observe anything. Sergeant May consequently did not get their names and addresses. We think the better practice would have been to get the identity of these three individuals. However, as the trial court concluded, the fact that these witnesses stated that they did not observe any event in the continuum of the criminal transaction indicates that they were not res gestae witnesses.

Under the facts presented, we find that there was due diligence shown in this case and reversal is not required on this point. *People v Sullivan,* 97 Mich App 488; 296 NW2d 81 (1980).

## VI

In this issue defendant challenges the exclusion of certain evidence. He specifically argues that the evidence of police misconduct was relevant and should not have been excluded by the trial court.

The admissibility of evidence is a question that rests within the sound discretion of the trial court. We will not overturn a trial court's decision to admit or exclude evidence absent a clear abuse of discretion. *People v Strickland,* 78 Mich App 40, 54; 259 NW2d 232 (1977), *lv den* 402 Mich 917 (1978).

In the instant case, defendant sought to present evidence that defendant was beaten by the police and that the police deliberately kept certain indi-

viduals from seeing him until his injuries had healed. Defendant's wife, Mrs. Solak, testified that she was not allowed to see defendant from the time of his arrest until approximately two days later. Mrs. Solak also testified that she contacted the police department by phone and asked if defendant's minister and lawyer would be allowed to see defendant. The phone call was apparently made the day after defendant was arrested. Mrs. Solak was informed that neither defendant's minister nor lawyer would be permitted to see defendant. This testimony was admitted without objection. Defense counsel then attempted to ask Mrs. Solak questions concerning the hospitalization of defendant after he was arrested. Upon objection, the trial court ruled that evidence of defendant's hospitalization after his arrest was irrelevant to the issue of whether defendant committed the charged offenses.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". MRE 401. Evidence which is not relevant is not admissible. MRE 402. Even if relevant, a trial court may choose to exclude evidence on the ground of prejudice, confusion, waste of time, or needless presentation of cumulative evidence. MRE 403.

We find that the trial court did not abuse its discretion by excluding evidence of defendant's hospitalization after the arrest because said evidence was not relevant to a determination of whether defendant committed the charged offense.

## VII

Defendant asserts that the trial court erred in

refusing to allow defendant to submit surrebuttal testimony to impeach Gidner's rebuttal testimony concerning vulgarities voiced by defendant while he was in the lock-up.

We note initially that defendant has failed to cite any authority in support of this issue. We may therefore decline to consider this claim.

We examine the evidence presented at trial to determine whether reversible error occurred. The trial court ruled that surrebuttal testimony on the question of whether defendant used vulgarities while in the lock-up was not necessary to impeach Gidner's rebuttal testimony. The trial court based its ruling on the fact that defendant had already presented evidence which, if believed, indicated that defendant typically did not use vulgar language and that he did not use the vulgarities to which Gidner testified. The record supports the trial court's findings and defendant was not entitled to present further proofs on the matter.

Defendant further asserts that the trial court erred in denying his motion to reopen the proofs to present newly discovered evidence to impeach Gidner's rebuttal testimony. Defendant's assertion lacks merit. The record indicates that the alleged newly discovered evidence was in the hands of defendant approximately 1-1/2 months before the trial commenced in this case. Hence, the evidence was not new evidence and the trial court did not abuse its discretion in deciding not to reopen the proofs.

## VIII

Defendant asserts under this issue that his conviction should be reversed on the basis of prosecutorial misconduct during the trial. Defendant claims that the prosecutor made various impermis-

sible and false statements. We will discuss these statements in the order raised by defendant.

The prosecutor's opening statement is challenged by defendant because the prosecutor informed the jury that, when Gidner first asked to see defendant's license, defendant used words to the effect that "you're not gonna get my fuckin license". Defendant assigns error to the prosecutor's remark because there was no evidence produced at trial suggesting that defendant made the precise statement offered during the prosecutor's opening statement. We note that there was testimony produced which, if believed, indicated that defendant used vulgar language during the time surrounding his arrest.

"The general rule is that when a prosecutor states that evidence will be submitted to the jury, which subsequently is not presented, reversal is not warranted if the prosecutor acted in good faith." *People v Pennington,* 113 Mich App 688, 694; 318 NW2d 542 (1982), *lv den* 417 Mich 983 (1983). We find that the prosecutor's reference to the challenged statement was made in good faith. The statement was not impermissibly injected as an attempt to prejudice the jury.

The remaining challenged prosecutorial actions occurred during closing argument. Defendant first challenges the prosecutor's unobjected-to statement concerning the presumption of innocence quoted below.

"In regard to the question of presumption of innocence, he's [defense counsel] made a statement that Jerry is still innocent. There is a presumption of innocence. Presumption is like a spurious presumption. Once you've heard the evidence and all that and go into the jury room, there is no presumption of innocence then. Because if that was true, then there would be no purpose of even having a trial."

It is well settled that the absence of an objection during trial precludes appellate review of alleged prejudicial remarks by a prosecutor during closing argument, unless the prejudicial effect was so great that it could not have been cured by timely cautionary instruction. *People v Rojem,* 99 Mich App 452, 459; 297 NW2d 698 (1980); *People v Tenbrink,* 93 Mich App 326, 332; 287 NW2d 223 (1979); *People v Blassingame,* 59 Mich App 327, 335; 229 NW2d 438 (1975). We find the prosecutor's statement concerning the presumption of innocence in this case was incorrect and therefore improper. However, not only could the error have been cured by a timely instruction, the trial court did so by giving a proper instruction on the presumption of innocence by emphasizing that the presumption of innocence continues throughout the trial and into the deliberations.

Next, defendant objects to the prosecutor's closing argument statement which indicated that the crime charged in this case is the "lowest" form of assault. We note that the prosecutor also pointed out that the charged offense was not a crime like felonious assault, assault with a weapon or assault with intent to do great bodily harm.

The record indicates that defendant timely objected to the prosecutor's reference to other crimes. At the time defendant raised the objection, the prosecutor had only referred to the crime of assault with intent to do great bodily harm. The trial court overruled the objection on the basis that the prosecutor's statement was that the charged offense was not like assault with intent to do great bodily harm.

The prosecutor should have refrained from referring to crimes other than the ones charged against defendant. However, any error which resulted was corrected when the trial court properly

instructed the jury on the elements of the charged offense of assault and battery.

Defendant further claims that the prosecutor improperly vouched for the credibility of one of his witnesses, Officer Gidner. Because no objection was made to the prosecutor's statement regarding Gidner's credibility, appellate review is foreclosed unless our failure to consider the issue would result in a miscarriage of justice. *People v Duncan,* 402 Mich 1, 16; 260 NW2d 58 (1977); MCL 769.26; MSA 28.1096.

We examine the prosecutor's remarks in the context in which they were made. *People v Allen,* 351 Mich 535; 88 NW2d 433 (1958). The challenged remark, although if standing alone could be seen as improper, does not mandate reversal in this case because of its responsive nature, *People v Dersa,* 42 Mich App 522, 527; 202 NW2d 334 (1972), *lv den* 388 Mich 803 (1972); *People v Green,* 34 Mich App 149, 151; 190 NW2d 686 (1971), *lv den* 386 Mich 769 (1971), and because any unduly prejudicial effect could have been eliminated by a curative instruction if one had been timely requested, *People v Hall,* 396 Mich 650; 242 NW2d 377 (1976). Indeed, in the present case the trial court gave the following appropriate and agreed-upon instruction.

"It is your duty as jurors to determine the facts. You are the sole and exclusive judges of the facts. You alone determine the weight, the effect and the value of evidence, as well as the believeability of witnesses. You must consider and weigh the testimony of all witnesses and all evidence. You alone are to determine whether to believe any witness or evidence and the extent to which any witness or evidence should be believed. Your decision as to any fact in this case is final.

\* \* \*

"*Any statements or arguments from the attorneys*

*are not evidence, but are only intended to assist you in understanding the evidence and the theory of each party."* (Emphasis added.)

## IX

Defendant finally argues that the trial court erred in failing to enter an order granting judgment notwithstanding the verdict or a new trial. We find that defendant's argument lacks merit.

The record indicates that defendant did not move for a new trial. Defendant can therefore not now claim that the trial court erred in failing to grant a new trial.

Judgment notwithstanding the verdict is to be granted only if there is insufficient evidence for a rational trier of fact to conclude that the defendant is guilty beyond a reasonable doubt of the crime charged. *People v Hampton, supra.*

Officer Gidner testified that defendant hit him with a closed fist. Officer Falbo testified that defendant pushed Gidner with an open hand. The testimony of both officers, if believed, was sufficient evidence for the jury to conclude beyond a reasonable doubt that defendant committed an assault and battery.

Affirmed.